UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JOSE HERNANDEZ,<br><br>                Plaintiff,<br>      v.<br><br>INDYMAC BANK, et al.,<br><br>                Defendants. | Case No. 2:12-cv-00369-MMD-CWH<br><br>ORDER<br><br>(Plf.'s Emergency Motion for Temporary Restraining Order – dkt. no. 39)<br>(Plf's Motion for Extension – dkt. no. 43) |

Before the Court is Plaintiff Jose Hernandez's second Emergency Motion for Temporary Restraining Order, which the Court will construe as a motion for reconsideration. (Dkt. no. 39.) The Court established a condensed briefing schedule and set oral argument for September 4, 2012. On August 31, 2012, Plaintiff filed a motion for an extension of time to file his reply brief. (Dkt. no. 43.) Both Motions are granted.

**I.    BACKGROUND**

Plaintiff Jose Hernandez purchased real property located at 3276 Costa Smeralda Circle, Las Vegas, Nevada 89117 ("the Property") on or about August 6, 1997. (Dkt. no. 39 at 8.) Hernandez obtained a loan of $780,000 ("the Loan") from Defendant IndyMac Bank, FSB ("IndyMac") and executed a promissory note ("Note"), which was secured by a deed of trust on the property ("the Deed of Trust"). (Dkt. no. 40-1.) The Deed of Trust names IndyMac as lender and designates Old Republic Title Company as trustee. (*Id.*) The Deed of Trust was recorded on September 3, 2003, in the official records of Clark County, Nevada. (*Id.*) In October 2008, Hernandez defaulted on the promissory note,

and subsequently attempted to negotiate a loan modification in December 2008, without success. (Dkt. no. 39 at 9.) Hernandez does not claim that he is current on his payments.

On May 4, 2007, Defendant IndyMac assigned the beneficial interest under the Deed of Trust, along with the Note, to Defendant Deutsche Bank National Trust Company as Trustee of IndyMac INDX Mortgage Loan Trust 2005-AR9 Mortgage Pass-Through Certificates Series 2005-AR ("Deutsche Bank"). (Dkt. no. 13-3.) The assignment was recorded on July 2, 2007. Thus, Deutsche Bank held both the Note and Deed of Trust as of May 2007. According to Hernandez, in July 2008, IndyMac failed and was seized by the Federal Deposit Insurance Corporation, which transferred all non-brokered insured deposits from IndyMac to Defendant IndyMac Federal Bank, FSB ("IndyMac Federal"). (Dkt. no. 39 at 9.)

Despite the assignment of the Note and Deed of Trust to Deutsche Bank, on March 9, 2009, IndyMac Federal purportedly substituted Defendant Quality Loan Service Corporation ("Quality Loan") as the Trustee under the Deed of Trust instead of Old Republic Title Company, and the substitution was recorded on March 19, 2009. (Dkt. no. 40-3 ("Substitution of Trustee").) The Substitution of Trustee identifies IndyMac Federal as "the present Beneficiary under said Deed of Trust." (*Id.*) On March 10, 2009, Quality Loan recorded a Notice of Breach and Default and Election to Sell ("Notice of Default"). (Dkt. no. 40-4.) The Notice of Default stated that Quality Loan "is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary" without specifying precisely who the beneficiary was at the time. (*Id.*)

Hernandez alleges that all assets and operations of IndyMac Federal were transferred to Defendant OneWest Bank, FSB ("OneWest") on March 19, 2009.[1] (Dkt. no. 39 at 9.) On December 2, 2009, OneWest executed an assignment, purportedly

---

[1] Quality Loan's Response to this Motion characterizes OneWest as a "successor to IndyMac." (Dkt. no. 40 at 2.)

2

1   transferring the Note and Deed of Trust to Deutsche Bank effective March 7, 2009.[2]
2   (Dkt. no. 40-2.) The assignment was recorded on December 8, 2009. (*Id.*)

3   On July 11, 2009, a Notice of Trustee's Sale was sent by Quality Loan setting a
4   sale date of July 6, 2009. Hernandez received the Notice on June 11, 2009. (Dkt. no.
5   13 at ¶ 12.) Hernandez filed for Chapter 7 bankruptcy on July 5, 2009, and the sale was
6   subsequently cancelled. Hernandez received a chapter 7 discharge on December 9,
7   2011. (Dkt. no. 40-5.)

8   On January 30, 2012, another Notice of Trustee's Sale executed on January 27,
9   2012, ("Second Notice of Sale") was recorded. (Dkt. no. 13-9.) The Second Notice of
10  Sale, sent by Quality Loan, scheduled the sale of the Property for February 21, 2012.
11  (*Id.*) The sale was rescheduled for March 2, 2012. (Dkt. no. 13 at ¶ 19.)

12  Hernandez filed this suit on February 28, 2012, in state court seeking only
13  declaratory and injunctive relief. Under the cause of action heading for declaratory relief,
14  Hernandez asks the Court to declare several defects in the foreclosure process,
15  including the declaration that Quality Loan is not an authorized trustee and lacks
16  authority to foreclose pursuant to NRS 107.080. Under the second cause of action
17  heading for injunctive relief, Hernandez requests a temporary restraining order ("TRO")
18  preventing the trustee's sale and a preliminary injunction preventing foreclosure pending
19  a trial on the merits.

20  On March 1, 2012, the state court issued a TRO enjoining the March 2, 2012,
21  sale. (Dkt. no. 1-2). Before the state court preliminary injunction hearing was held,
22  Defendants removed to this Court on March 7, 2012. Hernandez filed another motion for
23  a TRO on March 29, 2012. On June 8, 2012, the Court denied Hernandez's motion.
24  (Dkt. no. 27.) The Court held that Hernandez's challenge to the Notice of Sale

---

[2]This effective date is problematic. Accepting Hernandez's allegations that OneWest did not acquire the assets of IndyMac Federal until March 19, 2009, and even ignoring the assignment from IndyMac to Deustche Bank, OneWest did not hold the Note and the Deed of Trust as of March 7, 2009.

procedures and his claims of statutory defects in foreclosure were not likely to succeed on the merits, and that Hernandez did not demonstrate the standing required to pursue a declaratory judgment.

Hernandez filed this Motion on August 22, 2012, seeking to enjoin the upcoming September 7, 2012, foreclosure sale of the Property on the grounds that the Court's June 8, 2012, Order incorrectly applied the "tender rule."[3] (Dkt. no. 39.) Defendant Quality Loan filed its Response to the Emergency Motion on August 23, 2012. (Dkt. no. 40.) Defendant Deutsche Bank filed a Joinder to Quality Loan's Response on August 30, 2012. (Dkt. no. 42.)

**II.    ANALYSIS**

Hernandez's Motion is dedicated entirely to one argument concerning the Court's June 8, 2012, Order. While Hernandez's Complaint alleges a number of different deficiencies with Quality Loan's foreclosure of the Property, the Motion seeks to challenge this Court's holding regarding his standing to enjoin the foreclosure sale. The Court will thus construe this Motion as a motion for reconsideration of the Court's Order denying his previous request for TRO.[4] The Court will first address whether Hernandez has satisfied the requirements for seeking reconsideration before addressing the merits of his Motion.

///

///

///

---

[3] Hernandez filed his Motion as an ex parte emergency motion on August 21, 2012. The Court denied the Motion on the ground that good cause did not appear for ex parte relief, and directed Hernandez to re-file his motion as an emergency motion and serve Defendants. (Dkt. no. 38.)

[4] Hernandez's remaining allegations in the Complaint, including failure to properly issue a Notice of Default, the void status of the Notice of Default due to Plaintiff's bankruptcy filing, and Deutsche Bank's improper status as a beneficiary, are not raised by this Motion. Accordingly, the Court construes Hernandez's Motion as requesting reconsideration of only the statutory defective foreclosure claim. The discussion of Hernandez's claim in the Court's June 8, 2012, Order concerning inappropriate Notice of Sale remains intact.

### A.    Motion for Reconsideration

Although not mentioned in the Federal Rules of Civil Procedure, motions for reconsideration may be brought under 60(b).[5]  Under Rule 60(b), a court may relieve a party from a final judgment, order or proceeding only in the following circumstances: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) the judgment is void; (5) the judgment has been satisfied; or (6) any other reason justifying relief from the judgment.  *Stewart v. Dupnik*, 243 F.3d 549, 549 (9th Cir. 2000); *see also De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 880 (9th Cir. 2000) (noting that the district court's denial of a Rule 60(b) motion is reviewed for an abuse of discretion).

A motion for reconsideration must set forth the following: (1) some valid reason why the court should revisit its prior order; and (2) facts or law of a "strongly convincing nature" in support of reversing the prior decision.  *Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003).  On the other hand, a motion for reconsideration is properly denied when the movant fails to establish any reason justifying relief.  *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985) (holding that a district court properly denied a motion for reconsideration in which the plaintiff presented arguments that were already raised in his original motion).  Motions for reconsideration are not "the proper vehicles for rehashing old arguments," *Resolution Trust Corp. v. Holmes*, 846 F. Supp. 1310, 1316 (S.D. Tex. 1994) (footnotes omitted), and are not "intended to give an unhappy litigant one additional chance to sway the judge."  *Durkin v. Taylor*, 444 F. Supp. 879, 889 (E.D. Va. 1977).

The Court finds that Hernandez has presented a valid reason for the Court to revisit its June 8, 2012, Order, as addressed below.

///

---

[5]Motions for reconsideration may also be brought under Rules 59(e), but because Hernandez did not file his Motion within the requisite time period under Rule 59(e) – 28 days – that Rule is inapplicable here.  *See* Fed. R. Civ. P. 59(e).

**B.     Temporary Restraining Order**

The Court's June 8, 2012, Order premised its denial of Hernandez's request for a TRO on his failure to allege that he is current on his mortgage payments. (*See* Dkt. no. 27 at 8.) Hernandez contends, however, that the foreclosure is statutorily defective under NRS § 107.080. Since Hernandez did not bring a wrongful foreclosure or quiet title claim, he argues that he need not allege that the default is cured in order to state a claim. He seeks a TRO on the grounds that the defect renders the sale voidable.

Federal Rule of Civil Procedure 65 allows a court to issue a temporary restraining order and preliminary injunction. "An injunction is a matter of equitable discretion" and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22, 32 (2008). To obtain injunctive relief, such as a preliminary injunction or a temporary restraining order, a plaintiff must demonstrate (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Id.* at 20; *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010).

In addition, Local Rule 7-5(d) requires that all requests for emergency relief shall be accompanied by an affidavit setting forth the nature of the emergency, contact information for all affected parties, a statement by the movant describing their efforts to resolve this matter without court action. Though Hernandez has failed to describe his efforts to resolve the matter privately, the Court nevertheless will proceed to consider the merits of Hernandez's Motion.

**1.     Likelihood of Success on the Merits**

**a.     Defective foreclosure under § NRS 107**

The Court construes Hernandez's Complaint and Motion as seeking declaratory and injunctive relief under a defective foreclosure theory.[6]

---

[6]The Complaint alleges two causes of action, declaratory relief and injunctive relief. Declaratory and injunctive relief are not, however, causes of action. Despite this
*(fn. cont…)*

Nevada law provides that a deed of trust is an instrument that may be used to "secure the performance of an obligation or the payment of any debt." NRS § 107.020. Upon default, the beneficiary, the successor in interest of the beneficiary, or the trustee may foreclose on the property through a trustee's sale to satisfy the obligation. NRS § 107.080(2)(c). The procedures for conducting a trustee's foreclosure sale are set forth in NRS § 107.080. Under NRS § 107.080(5), a "sale made pursuant to this section may be declared void by any court of competent jurisdiction in the county where the sale took place if . . . [t]he trustee or other person authorized to make the sale does not substantially comply with the provisions of this section." NRS § 107.080(5)(a).

A nominee on a deed of trust has the authority, as an agent, to act on behalf of the holder of the promissory note and execute a substitution of trustees. *Gomez v. Countrywide Bank, FSB*, No. 09-1489, 2009 WL 3617650, at *1 (D. Nev. Oct. 26, 2009). As long as the note is in default and the foreclosing trustee is either the original trustee or has been substituted by the holder of the note or the holder's nominee, there is no defect in the Nevada foreclosure. *Id.* at *2.

In this case, it is not clear whether the proper parties foreclosed on the Property in the proper order. Quality Loan was purportedly substituted as a trustee by IndyMac Federal on March 9, 2009. (Dkt. no. 40-3.) In the Substitution of Trustee, IndyMac Federal represented that it was the present beneficiary under the Deed of Trust. (*Id.*) However, IndyMac had assigned its beneficial interest under the Deed of Trust and Note to Deutsche Bank back on May 4, 2007. (Dkt. no. 13-3.) For that reason, IndyMac (or its successor IndyMac Federal) had no right to substitute Quality Loan as a trustee in March 2009. *See, e.g.*, *DaSilva v. Wells Fargo Bank, N.A.*, No. 10-381, 2010 WL

---

*(…fn. cont.)* pleading error, the Federal Rules of Civil Procedure require courts to construe pleadings liberally, *see Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006), and Defendants have adequate notice of Hernandez's underlying claims relating to defective foreclosure. The Complaint specifically requests relief on the grounds that Quality Loan is not an authorized trustee and lacks authority pursuant to NRS § 107.080 to foreclose on the Property. (Dkt. no. 1-1 at 9.)

3910139, at *7 (D. Nev. Oct. 1, 2010) (discussing statutory defect in foreclosure under § 107.080). Based on the record before the Court, it appears that Deutsche Bank was the proper beneficiary and holder of the Note at the time that IndyMac purportedly substituted Quality Loan. During oral argument, Defendants argued that the 2007 assignment only assigned the beneficial interest to Deutsche Bank, but that IndyMac retained its economic interest as a holder of the Note. However, the records before the Court do not support this argument. First, the language of the original 2007 assignment explicitly makes Deutsche Bank the holder of the Note by including the following language: the beneficial interest is transferred "together with the note or notes therein described or referred to, the money due and to become due thereon with interest and all rights accrued or to accrue under said deed of trust." (Dkt. no. 13-3.) Second, IndyMac Federal identified itself in the Substitution of Trustee as "the Original beneficiary" under the Deed of Trust, not as the holder of the Note. (Dkt. no. 40-3.) The documentary evidence thus conflicts with Defendants' argument that Deutsche Bank only held the beneficial interest from the Deed of Trust, but IndyMac retained the economic interest under the Note.

Defendants also argue that Hernandez failed to allege that he was not in default. But they confuse Hernandez's defective foreclosure claim with a wrongful foreclosure claim. The latter requires a demonstration that the homeowner is not in default while the former does not. *See, e.g.*, *Elliott v. JPMorgan Chase Bank, N.A.*, No. 11-826, 2012 WL 1682039, at *4-5 (D. Nev. May 11, 2012) (dismissing wrongful foreclosure claim because plaintiff does not deny default, but allowing defective foreclosure claim to proceed); *Nazaire v. World Sav. Bank*, No. 11-564, 2011 WL 5196703, at *1 (D. Nev. Oct. 27, 2011) (same). Regardless of whether Hernandez can cure his default, Defendants must proceed with the foreclosure consistent with Nevada law as codified in NRS § 107.080.

In its Joinder, Deutsche Bank also argues that a TRO should not be issued because Hernandez has failed to present evidence that Quality Loan did not have an agency relationship with the rightful trustee or beneficiary at the time the Notice of

1  Default was issued. (Dkt. no. 42 at 7.) That position confuses the law, and effectively
2  precludes any homeowner from seeking to challenge a foreclosure. Nevada law, by
3  including, among other provisions, various recording and notice requirements, places the
4  burden on the foreclosing entity to demonstrate their authority to initiate foreclosure
5  proceedings, whether as the beneficiary, the successor in interest to the beneficiary, the
6  trustee, or their agent. Otherwise, a borrower like Hernandez would bear the burden of
7  producing evidence that Quality Loan and Deutsche Bank agreed, at some time prior to
8  the Notice of Default issuing, that Quality Loan would act as Deutsche Bank's agent –
9  evidence impossible for any borrower to have. While this does not mean that all such
10 agreements must be recorded or publicized, the foreclosing entity should certainly be
11 required to demonstrate some evidence of them. This is particularly important, where,
12 as here, the public records show that IndyMac Federal did not hold the Note and Deed
13 of Trust at the time it purportedly substituted Quality Loan as the trustee under the Deed
14 of Trust. Moreover, based on these records, which Defendants do not dispute,
15 Hernandez has presented sufficient evidence to demonstrate that Quality Loan did not
16 have an agency relationship with the rightful beneficiary or trustee – Deutsche Bank.

### b. Judicial estoppel

18 Instead of demonstrating its authority to initiate foreclosure proceedings,
19 Defendants argue that Hernandez is not likely to succeed on the merits because judicial
20 estoppel bars Hernandez's claims. Since Hernandez failed to disclose his potential
21 claims against Defendants in his bankruptcy filing, Defendants argue that he is judicially
22 estopped from prosecuting these claims. This argument fails.

23 The Supreme Court identified three factors that courts typically consider in
24 applying this equitable remedy: 1) whether a party has taken a position clearly
25 inconsistent with its earlier position; 2) whether the party succeeded in persuading the
26 court to adopt its earlier position; and 3) whether, in the absence of estoppel, the party
27 seeking to assert an inconsistent position would derive an unfair advantage or impose
28 an unfair detriment on the opposing party. *New Hampshire v. Maine*, 532 U.S. 742, 750-

1  51 (2001). The doctrine of judicial estoppel in the context of bankruptcy proceedings
2  precludes a debtor from pursuing a non-bankruptcy claim if the debtor fails to disclose
3  his claims in the schedule of assets and liabilities disclosed and approved during the
4  bankruptcy proceeding. *See Hamilton v. State Farm Fire & Cas. Co*, 270 F.3d 778, 782-
5  84 (9th Cir. 2001); *Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555, 557 (9th
6  Cir. 1992); Fed. R. Bankr. P. 1007(b)(1) (debtor must file a schedule of assets and
7  liabilities and a statement of financial affairs); 11 U.S.C. § 1125(b) (1988) (debtor must
8  provide claimants with a disclosure statement containing "adequate information").

9  The application of judicial estoppel in the bankruptcy context does not require that
10 a debtor intentionally omit potential claims from his disclosures. *See, e.g.*, *Barger v. City*
11 *of Cartersville, Georgia*, 348 F.3d 1289, 1296 (11th Cir. 2003); *see also In re Coastal*
12 *Plains*, 179 F.3d 197, 212 (5th Cir. 1999) (applying judicial estoppel despite the fact that
13 the debtor relied on his attorneys to accurately complete the bankruptcy application and
14 did not intentionally fail to list all claims). However, courts have held that intent is a
15 factor in determining whether judicial estoppel applies. *See, e.g.*, *Schneider v. UNUM*
16 *Life Ins. Co. of Am.*, No. 05-1402, 2008 WL 109065, at *5 (D. Or. Jan. 8, 2008) ("[O]ne
17 can infer from *Hamilton* that intent was a factor in that decision because the debtor was
18 unscrupulous and the court made repeated reference to his bad behavior in the
19 opinion").

20 The doctrine of judicial estoppel would preclude Hernandez's suit only where
21 Hernandez knew during the pendency of the bankruptcy proceedings enough facts that
22 would give rise to his later action. *See Hamilton*, 270 F.3d at 784 ("Judicial estoppel will
23 be imposed when the debtor has knowledge of enough facts to know that a potential
24 cause of action exists during the pendency of the bankruptcy, but fails to amend his
25 schedules or disclosure statements to identify the cause of action as a contingent
26 asset."). Here, most of the operative facts that gave rise to this Complaint occurred
27 before Hernandez's July 5, 2009, bankruptcy filing and subsequent December 9, 2011,
28 discharge. The original assignment of the beneficial interest by IndyMac was recorded

on July 2, 2007. IndyMac Federal recorded the Substitution of Trustee on March 19, 2009. On March 10, 2009, Quality Loan recorded the Notice of Default. Hernandez received Quality Loan's Notice of Trustee's Sale on June 11, 2009. OneWest recorded its purported assignment of its interest to Deutsche Bank on December 8, 2009.

The discrepancies in the chain of assignments were in theory visible at the time of the bankruptcy. But Hernandez argues in his Reply that he was made aware of potential claims against Defendants only after the January 30, 2012, Second Notice of Trustee's Sale upon consultation with an attorney (dkt. no. 44 at 10), and that he did not know of the problems in the chain of interests at the time of his bankruptcy filing (dkt. no. 20-1 at ¶¶ 12-15).

Given the complexity of the foreclosure process and the confusing array of documents at issue in this case, it is understandable that Hernandez failed to comprehend and appreciate the gravity of the discrepancies associated with his home's foreclosure. Indeed, even Defendants appear to fail to notice the May 4, 2007, assignment of the Deed of Trust and Note from IndyMac to Deutsche Bank, since they purported to execute various subsequent assignments and failed to cure these defects before initiating foreclosure. Judicial estoppel might be appropriate in this context if Hernandez had conducted a records search at his local registrar for documents relating to his home, and if he could have understood based on that search that IndyMac and its successors did not have the authority to substitute trustees after the March 7, 2009, assignment to Deutsche Bank. Otherwise, successful application of judicial estoppel in this context usually occurs when the homeowner files for bankruptcy during or after seeking judicial relief from foreclosure. *See, e.g.*, *Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1030-31 (N.D. Cal. 2010); *HPG Corp. v. Aurora Loan Servs., LLC*, 436 B.R. 569, 577-79 (E.D. Cal. Sep. 21, 2010); *Villa v. Silver State Financial Servs., Inc.*, No. 10-2024, 2011 WL 1979868, at *4-5 (D. Nev. May 20, 2011). That was not the case here.

///

For these reasons, Hernandez is likely to succeed on the merits of his statutory defective foreclosure claim under NRS § 170.080.

### 2. Irreparable Harm, Balance of Equities, and Public Interest

The Court holds that Hernandez demonstrates a likelihood of irreparable harm, since a defective foreclosure would result in Hernandez improperly losing his home. The Court also holds that the balance of equities and the public interest favors granting temporary relief. *See DaSilva*, 2010 WL 3910139, at *7 (remaining three factors favor temporary injunctive relief). Delaying the foreclosure sale temporarily would not significantly burden Defendants, and the public has an interest in preventing voidable foreclosure sales of properties in default. As a result, Hernandez has satisfied the four requirements for temporary injunctive relief. Neither Quality Loan nor Deutsche Bank requested Hernandez post a bond to secure the TRO, so none will be required.

### B. Preliminary Injunction

Plaintiff concedes that his Motion only seeks a temporary injunction pending his request for preliminary injunction. Accordingly, the Court will issue a minute order scheduling the preliminary injunction. The Court will entertain briefing on Plaintiff's preliminary injunction request based on the briefing schedule identified below.

## III. CONCLUSION

IT IS HEREBY ORDERED that Plaintiff Jose Hernandez's Emergency Motion for Temporary Restraining Order (dkt. no. 39) is GRANTED.

IT IS FURTHER ORDERED that Part B.2 (pages 7-8) of the Court's June 8, 2012 Order (dkt. no. 27) is VACATED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Extent Time (dkt. no. 43) is GRANTED.

IT IS FURTHER ORDERED that Defendant Quality Loan Service Corporation is temporarily enjoined from conducting the September 7, 2012, trustee sale of the subject property pending a hearing on Plaintiff's request for preliminary injunction.

///

IT IS FURTHER ORDERED that Plaintiff must file his opening preliminary injunction brief ten (10) days from the date of this Order. The Response and Reply deadlines will be filed in accordance with Local Rule 7-2. The parties will address three issues in their briefing: (1) the discrepancies in the assignments and transfers as noted in this Order, (2) Quality Loan's challenged status as an agent of Deutsche Bank, (3) Deutsche Bank's status as the current beneficiary under the Deed of Trust and Note, and (4) an appropriate bond amount in the event a preliminary injunction is issued.

ENTERED THIS 5th day of September 2012.

_____
UNITED STATES DISTRICT JUDGE